No. 22-56176
_____

## UNITED STATES COURT OF APPEALS
### FOR THE NINTH CIRCUIT
_____

THIMES SOLUTIONS INC.,

*Plaintiff-Appellant*,

v.

TP LINK USA CORPORATION,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the Central District of California
District Court No. 2:19-cv-10374-SB-E
The Honorable Stanley Blumenfeld, Jr.
_____

## APPELLANT'S OPENING BRIEF
_____

Randolph Gaw                           Mark Schlachet
Mark Poe
Victor Meng

Gaw | Poe LLP                          Law Offices of Mark Schlachet
4 Embarcadero Center, Suite 1400       9511 Collins Ave., Ste. 605
San Francisco, CA 94111                Surfside, FL 33154
415.766.7451 (tel)                     (216) 225-7559
415.737.0642 (fax)                     markschlachet@me.com

1

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Plaintiff-Appellant Thimes Solutions Inc. hereby states, by and through counsel, that it does not have a parent corporation and that no publicly held corporation owns 10% or more of its stock.

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................1

JURISDICTION...................................................................................8

STATEMENT OF THE ISSUES ON APPEAL .................................8

STATEMENT OF THE CASE.............................................................9

    A.   Thimes's Business on the Amazon Marketplace............................9

    B.   TP-Link Eliminates Thimes from the Amazon Marketplace by Falsely Accusing It of Selling Counterfeit Goods. ..................................11

    C.   The First Appeal. ........................................................................14

    D.   The District Court Grants TP-Link's Motion for Summary Judgment Following Remand..............................................................................15

SUMMARY OF ARGUMENT ..........................................................18

STANDARD OF REVIEW ...............................................................22

ARGUMENT .....................................................................................24

I.     THE DISTRICT COURT ERRED IN DISMISSING THIMES'S TORTIOUS INTERFERENCE CLAIMS.......................................................24

    A.   TP-Link's Counterfeiting Complaints are Commercial Speech as a Matter of Law. ................................................................................25

    B.   The Evidence Establishes that TP-Link's Counterfeiting Complaints were Commercial in Nature.................................................................27

II.    THE DISTRICT COURT ERRED BY FINDING THAT TP-LINK'S FALSE COUNTERFEITING COMPLAINTS WERE UNACTIONABLE STATEMENTS OF OPINION. ........................................................28

    A.   Statements of Opinion Do Not Enjoy Unfettered Constitutional Protection. ......................................................................................28

    B.   The Totality of Circumstances Demonstrates that TP-Link's Counterfeiting Allegations Imply a Factual Assertion. ...............................30

1. The context and tenor of TP-Link's counterfeiting complaints give the impression that it was asserting provably false facts. ......................31

   a) TP-Link modified the Amazon form to make specific allegations of counterfeiting. ...........................................................................32

   b) The medium through which TP-Link made its counterfeiting allegations means the reader would view the statements as factual..........................33

2. TP-Link did not use figurative or hyperbolic language that would negate the impression it was asserting an objective fact..........................37

3. TP-Link's complaints are reasonably susceptible of being interpreted as implying a provably false assertion of fact......................37

   a) The District Court arrived at its erroneous conclusion by improperly recharacterizing the actual words TP-Link used....................................37

   b) Whether Thimes committed generic trademark infringement can be proven false as a matter of fact. .............................................41

   c) The District Court's interpretation of TP-Link's statements is not the only reasonable interpretation as a matter of law. ...................................43

III. THE DISTRICT COURT ERRED BY HOLDING THAT THIMES HAD NOT PRODUCED ANY EVIDENCE OF SPECIAL DAMAGES...............44

   A. There is No Authority Expressly Requiring the Defendant to Make the Libelous Statement Directly to the End Customer. .....................................44

   B. Thimes Established Proof of Special Damages By Identifying the Specific Customers That It Lost as a Result of TP-Link's False Counterfeiting Complaints..........................................................................48

CONCLUSION ....................................................................................................51

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aetna Cas. and Sur. Co. v. Centennial Ins. Co.*,
  838 F.2d 346 (9th Cir. 1988) ..................................................................45

*AlterG, Inc. v. Boost Treadmills LLC*,
  388 F. Supp. 3d 1133 (N.D. Cal. 2019)...........................................50

*Am. Circuit Breaker Corp. v. Oregon Breakers Inc.*,
  406 F.3d 577 (9th Cir. 2005) ..............................................................42

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)..................................................................................23

*Campanelli v. Regents of the Univ. of Cal.*,
  44 Cal. App. 4th 572 (1996) ................................................................33

*ComputerXpress, Inc. v. Jackson*,
  93 Cal. App. 4th 993 (2001) .........................................................28, 29

*CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*,
  479 F.3d 1099 (9th Cir. 2007) ............................................................24

*Diaz v. Kubler Corp.*,
  785 F.3d 1326 (9th Cir. 2015) ...........................................................23

*Dickinson v. Cosby*,
  37 Cal. App. 5th 1138 (2019) ............................................................29

*Doe v. CVS Pharmacy, Inc.*,
  982 F.3d 1204 (9th Cir. 2020) ...........................................................25

*Enigma Software Group USA, LLC v. Malwarebytes, Inc.*,
  No. 21-16466, __ F. 4th __, 2023 WL 3769331 (9th Cir. June 2,
  2023) ...................................................................................................*passim*

*Erlich v. Etner*,
  224 Cal. App. 2d 69 (1964) ...........................................45, 46, 47, 50

*FilmOn.com Inc. v. DoubleVerify Inc.*,
7 Cal. 5th 133 (2019) ...................................................................2, 3, 26

*Franklin v. Dynamic Details, Inc.*,
116 Cal. App. 4th 375 (2004) ...............................................................31

*Gen. Motors Corp. v. Keystone Auto. Indus., Inc.*,
453 F.3d 351 (6th Cir. 2006) ................................................................40

*Heartland Payment Sys., Inc. v. Mercury Payment Sys., LLC*,
No. 14-CV-0437 CW, 2016 WL 304764 (N.D. Cal. Jan. 26, 2016) .................51

*Heitkoetter v. Domm*,
No. 22-CV-368-AWI-BAM, 2022 WL 16748731 (E.D. Cal. Nov.
7, 2022) ...........................................................................................26

*Herring Networks, Inc. v. Maddow*,
8 F.4th 1148 (9th Cir. 2021) .........................................................31, 33, 34, 37

*Ixchel Pharma, LLC v. Biogen, Inc.*,
9 Cal. 5th 1130 (2020) ........................................................................24

*JAMS, Inc. v. Superior Ct.*,
1 Cal. App. 5th 984 (2016) ...................................................................27

*Kaelin v. Globe Commc'ns Corp.*,
162 F.3d 1036 (9th Cir. 1998) .........................................................33, 43

*Kaiser v. Cascade Capital, LLC*,
989 F.3d 1127 (9th Cir. 2021) ...............................................................23

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) ........................................................33, 34

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*,
658 F.3d 945 (9th Cir. 2011) ................................................................39

*Mann v. Quality Old Time Serv., Inc.*,
120 Cal. App. 4th 90 (2004) .................................................................50

*Manufactured Home Communities, Inc., Inc. v. County of San Diego*,
544 F.3d 959 (9th Cir. 2008) .........................................................43, 44

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 (1990)..................................................................3, 20, 29

*Muddy Waters, LLC v. Superior Court*,
    62 Cal. App. 5th 905 (2021) ......................................................*passim*

*NEC Electronics v. CAL Circuit Abco*,
    810 F.2d 1506 (9th Cir. 1987) ....................................................41, 42

*Oswalt v. Resolute Indus., Inc.*,
    642 F.3d 856 (9th Cir. 2011) ..............................................................22

*Overstock.com, Inc. v. Gradient Analytics, Inc.*,
    151 Cal. App. 4th 688 (2007) ............................................................29

*Piping Rock Partners, Inc. v. David Lerner Associates, Inc.*,
    946 F.Supp.2d 957 (N.D. Cal. 2013).................................................51

*Rodriguez v. Panayioutou*,
    314 F.3d 979 (9th Cir. 2002) ......................................................*passim*

*Salve Regina Coll. v. Russell*,
    499 U.S. 225 (1991)............................................................................23

*Sebastian International, Inc. v. Longs Drug Stores Corporation*,
    53 F.3d 1073 (9th Cir. 1995) ............................................................42

*Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*,
    621 F.3d 981 (9th Cir. 2010) ............................................................23

*Serova v. Sony Music Ent.*,
    13 Cal. 5th 859 (2022) ......................................................................27

*Standing Comm. on Discipline of U.S. Dist. Court for Cent. Dist. of California v. Yagman*,
    55 F.3d 1430 (9th Cir. 1995) ............................................................30

*Steam Press Holdings, Inc. v. Hawaii Teamsters, Allied Workers Union, Loc. 996*,
    302 F.3d 998 (9th Cir. 2002) ............................................................23

*Sunward Corp. v. Dun & Bradstreet, Inc.*,
811 F.2d 511 (10th Cir. 1987) ............................................................49

*Tolan v. Cotton*,
572 U.S. 650 (2014) .....................................................................7, 49

*U.S. v. Petrosian*,
126 F.3d 1232 (9th Cir. 1997) ...........................................................39

*Underwager v. Channel 9 Australia*,
69 F.3d 361 (9th Cir. 1995) .............................................................38

*Unelko Corp. v. Rooney*,
912 F.2d 1049 (9th Cir. 1990) ....................................................3, 30, 37

*Wallis v. Princess Cruises, Inc.*,
306 F.3d 827 (9th Cir. 2002) ............................................................22

*Xu v. Huang*,
73 Cal. App. 5th 802 (2021) ....................................................2, 19, 25, 26

*Zest Anchors, LLC v. Geryon Ventures, LLC*,
No. 22-CV-230 TWR (NLS), 2023 WL 2903668 (S.D. Cal. Apr.
10, 2023) .................................................................................26

**Statutes**

15 U.S.C. § 1121(a) .......................................................................8

15 U.S.C. § 1127 ..........................................................................39

28 U.S.C. § 1291 .......................................................................8, 10

28 U.S.C. § 1332(a)(1) .....................................................................8

**Other Authorities**

Fed. R. App. Proc. 27-14 ..................................................................10

# INTRODUCTION

For the second time, Plaintiff-Appellant Thimes Solutions Inc. ("Thimes") is forced to appeal an erroneous decision by the District Court holding that Thimes is not entitled to any relief as a matter of law despite being driven out of business by Defendant-Appellee TP-Link USA Corporation ("TP-Link") falsely accusing Thimes of selling counterfeit TP-Link products on Amazon. On the first appeal, this Court reversed the District Court's order dismissing Thimes's claims for trade libel and tortious interference. In this appeal, Thimes respectfully requests that this Court reverse the District Court's summary judgment order that dismissed these revived claims for a second time.

TP-Link is a global leader in manufacturing wireless router products. Thimes was a small business that purchased authentic products in their original packaging from close-out distributors and re-sold them unaltered on Amazon at a price much lower than what manufacturers charged. Using this strategy, Thimes started selling genuine TP-Link wireless products on Amazon in January 2018. TP-Link responded to Thimes's competitive threat by submitting 73 complaints to Amazon over the next six months falsely accusing Thimes of selling "counterfeit" TP-Link products and asserting that "the product or packaging has an unlawful reproduction of a registered trademark[.]" TP-Link made those statements despite knowing that Thimes was selling genuine TP-Link products. Amazon thereafter expelled Thimes from its

platform, after Thimes had built up two years of customer goodwill and was earning six-digit monthly profits.

The District Court's summary judgment order is replete with reversible errors, starting with its dismissal of Thimes's tortious interference claims for want of an independently wrongful act. The District Court concluded that TP-Link's false counterfeiting allegations "do not constitute commercial speech" under California's unfair competition law ("UCL") and thus Thimes could not rely on the UCL to satisfy the independently wrongful act requirement. ER-017-18. This was wrong. Under California law, "[a] defendant who makes statements about a business competitor's goods or services to advance the defendant's business" is not eligible for anti-SLAPP protection because such speech falls within the "*commercial speech*" exemption to that statute. *Xu v. Huang*, 73 Cal. App. 5th 802, 813 (2021) (emphasis added). And as previously described by the California Supreme Court, "'all of the speech exempted from the anti-SLAPP statute *is commercial speech*, but not all commercial speech is exempted thereunder.'" *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 147 (2019) (quoting *All One God Faith, Inc. v. Organic & Sustainable Indus. Standards, Inc.*, 183 Cal. App. 4th 1186, 1217 (2010)) (emphasis added). The evidence establishes that TP-Link accused Thimes of selling counterfeit products to advance its own business interests—to remove Thimes as a competitive threat from Amazon so that TP-Link could sell its products at higher

2

prices. ER-218. TP-Link's complaints to Amazon thus fall within the anti-SLAPP statute's commercial speech exemption and is therefore commercial speech as a matter of law. *FilmOn.com Inc.*, 7 Cal. 5th at 147.

The District Court also erroneously dismissed Thimes's trade libel claim. First, it held that TP-Link's false counterfeiting allegations constituted unactionable opinions. The District Court made this ruling because it held that "[a] statement that is expressly qualified as being a 'good faith belief' that another is committing intellectual property infringement generally is not a statement of fact." ER-013. But the Supreme Court has rejected the notion that statements of opinion enjoy blanket protection—"[s]imply couching [] statements in terms of opinion does not dispel these [false, defamatory] implications" because a speaker may still imply "a knowledge of facts which lead to the [defamatory] conclusion." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990).[1] Post-*Milkovich*, the question "is not whether a statement 'might be labeled opinion,' but rather whether a reasonable factfinder could conclude that the statement 'impl[ies] an assertion of objective fact.'" *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir. 1990).

---

[1] In its briefing to the District Court, Thimes relied principally upon California appellate opinions regarding the distinction between facts and opinions since its trade libel claim arose under state law. The District Court based its holding upon on federal authorities, however, and thus Thimes will show that the District Court's decision was wrong as a matter of both federal and California law. ER-011.

The District Court's order is silent, however, about whether TP-Link's statements that it had a "good faith belief" that Thimes sold counterfeit TP-Link products "imply an assertion of objection fact." Instead, the District Court purported to apply this Court's totality of circumstances test to conclude that TP-Link's allegations were pure opinions. ER-011, 013-014 (citing *Underwager v. Channel 9 Australia*, 69 F.3d 361, 365 (9th Cir. 1995)). According to the District Court, the 73 counterfeiting complaints contained only unactionable opinions because they supposedly "were made in the general context of an Amazon-hosted online form" that "does not allow a complainant to modify the language used to describe a report of possible wrongdoing," "the descriptions are legal in nature and must be supported by a good-faith belief," and because "Thimes cannot prove to a jury that TP-Link's infringement complaint was false as a matter of fact." ER-013-014. Each of these reasons is wrong.

To begin, not even TP-Link ever contended that the Amazon complaint form "does not allow a complainant to modify the language used to describe a report of possible wrongdoing." That is because such a statement is false—the undisputed evidence shows the opposite. Thus, not only did the District Court fail to make all factual inferences in favor of Thimes, as the law requires, it made a critical conclusion that was contradicted by the record.

4

But even (incorrectly) assuming that the Amazon form "does not allow a complainant to modify the language used," the District Court turned the totality of circumstances test on its head in determining that the sober nature of TP-Link's complaints conveyed an opinion that was not capable of being proved true or false. As this Court's precedent makes clear, the purpose of the contextual analysis is to immunize less serious speech, such as satire, juvenile humor, or political commentary, because, ***under those contexts***, no reasonable person would believe that such speech stated or implied an assertion of fact. Here, in contrast, TP-Link attested to Amazon, under penalty of perjury, that Thimes was ***committing a federal crime*** by selling an illegal knockoff of TP-Link's products in an effort to have Amazon remove Thimes's listings from the Amazon marketplace. The "natural and probable effect" these statements would have upon Amazon is to take the accusations seriously. *Rodriguez v. Panayioutou*, 314 F.3d 979, 986 (9th Cir. 2002). Indeed, for the online form to serve its intended purpose, Amazon would necessarily expect the complainant to base its accusations on verifiable facts, so that it could act upon those allegations. The context, content, and tenor of the complaints thus all necessarily suggest that TP-Link was asserting objective facts when accusing Thimes of selling counterfeit products.

Additionally, the District Court's holding that "Thimes cannot prove to a jury that TP-Link's infringement complaint was false as a matter of fact" is erroneous on

its face. ER-014. TP-Link specifically alleged that Thimes sold a product or used packaging that "has an unlawful reproduction of a registered trademark." ER-009. This statement can indisputably be proven to be true or false. But those are not the words the District Court analyzed. For some reason, it instead reframed the statement as whether "the speaker has a good faith belief that another party is infringing its trademark[.]" ER-014. Based upon its unilaterally reworded language, the District Court concluded that Amazon "would have understood TP-Link's complaints that Thimes's products were 'counterfeit' as alleging a form of intellectual property infringement." ER-013. But the District Court offers no explanation, nor rational basis why, as a matter of law, Amazon would view TP-Link's complaint as merely "alleging a form of intellectual property infringement," when the complaints *literally asserted that Thimes's "product is counterfeit" and has an "unlawful reproduction of a registered trademark[.]"*

Finally, the District Court also erred by dismissing Thimes's trade libel claim on the additional basis that Thimes could not establish special damages as a matter of law. According to the District Court, Thimes failed to provide evidence of transactions that it would have completed "but for the customer's reliance on TP-Link's allegedly false complaints." ER-017. But no authority mandates reliance by the *end consumer*. Rather, a trade libel plaintiff need only establish reliance by any third party that had a causal effect upon the plaintiff's lost sales. Indeed, in *Muddy*

6

*Waters, LLC v. Superior Court*, 62 Cal. App. 5th 905 (2021), the California Court of Appeal held that such a plaintiff "must prove in all cases that the publication has played a material and substantial part in inducing **others** not to deal with him, and that as a result he has suffered special damages." *Id.* at 925 (emphasis added). That is, California law allows a libeled plaintiff to recover damages when critical intermediaries choose not to deal with the plaintiff as a result of the defendant's libelous statement.

Here, Thimes presented evidence that Amazon stopped doing business with it as a result of TP-Link's false counterfeiting complaints and, in turn, Thimes lost future sales to its repeat customers. In addition, Thimes also (i) identified by name over 4,000 repeat customers that it lost as a result of TP-Link's false complaints and (ii) submitted evidence explaining why Thimes would have converted those customers into additional sales of TP-Link products absent TP-Link's interference. Precedent required the District Court to view this evidence "in the light most favorable to [Thimes]" and draw "all justifiable inferences" in its favor. *Tolan v. Cotton*, 572 U.S. 650, 651, 657 (2014). It failed to do so and instead wrongly held that Thimes was relying only on a general decline in business to show damages for its trade libel claim.

For these reasons and those detailed herein, this Court should reverse the District Court's summary judgment order in its entirety. Indeed, as this Court stated

7

in its recently decided case of *Enigma Software Group USA, LLC v. Malwarebytes, Inc.*, No. 21-16466, __ F. 4th __, 2023 WL 3769331 (9th Cir. June 2, 2023):

> Enigma has alleged that Malwarebytes disparaged Enigma's products for commercial advantage by making misleading statements of fact. If those allegations are true… trying to wrap them in a First Amendment flag does not make them any less offensive or any less actionable. "Society has little interest in protecting such conduct under the mantle of the First Amendment."

*Id.* at *7 (citation omitted). TP-Link's false counterfeiting allegations are not protected under the First Amendment, and there is no reason why they should be.

## JURISDICTION

The District Court had diversity jurisdiction because the parties are all citizens of different states and the amount in controversy is in excess of $75,000. 28 U.S.C. § 1332(a)(1).

The District Court dismissed this case with prejudice and entered final judgment on November 22, 2022. ER-006. Thimes timely noticed this appeal. ER-259. This Court has jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES ON APPEAL

1.  Did the District Court err in granting summary judgment against Thimes's tortious interference claims on the basis that TP-Link's statements that Thimes sold counterfeit TP-Link products—which were made for the purpose of destroying Thimes's ability to re-sell TP-Link's products at competitive prices—did not constitute commercial speech under California's unfair competition law and therefore could not serve as the predicate independently wrongful act for those claims?

8

2.   Did the District Court err in granting summary judgment against Thimes's trade libel claim when it held that TP-Link's statements that Thimes sold counterfeit TP-Link products constituted unactionable statements of opinion?

3.   Did the District Court err in granting summary judgment against Thimes's trade libel claim on the basis that none of its end customers relied upon TP-Link's defamatory statements, even though the evidence supports the inference that TP-Link's statements caused Amazon to expel Thimes from its marketplace and prevented Thimes from selling to its end customers?

4.   Did the District Court err in granting summary judgment against Thimes's trade libel claim when it concluded that Thimes's identifying lost sales from several thousand repeat customers amounted only to a general decline in business and did not constitute special damages?

## STATEMENT OF THE CASE

### A.   Thimes's Business on the Amazon Marketplace.

Thimes was a reseller on Amazon, an online retailer that allows others to list products for sale to the public.  ER-008.  Using the trade name "Universal Goods and Sales," Thimes continuously sold on Amazon starting in 2016 until its expulsion on August 27, 2018.  ER-047, ER-126, ER-198.  During that time, Thimes increased its sales on Amazon from $1,178,761 in 2017 to $1,966,639 through the first three quarters of 2018.  ER-126.  Thimes sold over 175,000 products on the Amazon Marketplace with a 98% lifetime positive feedback rating.  ER-128.  Thimes would buy factory-sealed, new consumer products in bulk from reputable wholesalers and liquidators that would be delivered directly to Amazon and, in turn, Amazon would handle all shipping logistics to Thimes's customers through the "Fulfillment by Amazon" service.  ER-130.  Thimes sold only genuine products on the Amazon

9

Marketplace.  *Id.*

Thimes regularly qualified for Amazon's "Buy Box" on many of its listings. ER-128.  The Buy Box gives the customer looking at a product on Amazon's website the option to buy the product by clicking the "Add to Cart" or "Buy Now" button. ER-126.  When the customer clicks on those options, that order gets fulfilled by the specific Amazon seller that qualified for that particular "Buy Box" listing, and the customer bypasses visiting that seller's Amazon page or Amazon listing for that product.  ER-126-27.  Using the "Buy Box" option gives the impression that the customer is buying directly from Amazon, but the customer is actually buying from the seller that qualified for the "Buy Box" option while Amazon fulfills the order. *Id.*  Independent analysts have estimated that between 75-85% of all sales on Amazon take place through the "Buy Box."  ER-130.

Many of Thimes's sales on Amazon took place through the "Buy Box" option, and Thimes identified by name dozens of specific Amazon customers that purchased various products from Thimes between 4 and 17 times.  ER-129.  Thimes also identified by name an additional 4,092 specific Amazon customers that had purchased products from Thimes between 2-3 times.  ER-130.[2]

---

[2] Thimes manually lodged the electronic version of these sales records with the District Court. ER-030.  To the extent the Court finds these records relevant, Thimes will promptly submit them as part of the record on appeal.  Fed. R. App. Proc. 27-14 advisory committee note.

TP-Link is a manufacturer of wireless internet products. ER-009. Thimes started selling TP-Link products on the Amazon Marketplace in January 2018. ER-232.

### B. TP-Link Eliminates Thimes from the Amazon Marketplace by Falsely Accusing It of Selling Counterfeit Goods.

Auction Brothers, Inc. d/b/a Amazzia[3] is a firm that offers "brand protection services" to help manufacturers eliminate unwanted resellers of their products on the Amazon Marketplace. ER-197. Amazzia searches for client-identified listings on Amazon to find its clients' product(s) that were being re-sold by unauthorized resellers. *Id.* Amazzia would then file complaints with Amazon with the goal of having Amazon remove these unauthorized resellers' sales listings. *Id.*

TP-Link retained Amazzia for such brand protection services and instructed it to monitor Amazon for specific listings of TP-Link products being sold by unauthorized resellers. *Id.* Amazzia then reported these unauthorized resellers to Amazon until Amazon removed their TP-Link offerings from its online marketplace. ER-197-98. Thimes became one of TP-Link's targets after Amazzia found Thimes selling the TP-Link AC5400 wireless router on Amazon. *Id.* Between January 12, 2018 and July 20, 2018, Amazzia filed a total of 73 complaints with Amazon on behalf of TP-Link accusing Thimes of selling counterfeit TP-Link products. ER-

---

[3] Amazzia was a defendant but separately settled with Thimes. ER-287 (Dkt. 249).

198-99.

To report unauthorized sellers to Amazon, Amazzia used an Amazon web-based form where it could select one of the following three options regarding a particular Amazon listing:

(1) A product detail page is unlawfully using my trademark

(2) A product or packaging has my trademark on it

(3) A product is counterfeit (the product or packaging has an unlawful reproduction of a registered trademark)

ER-198. *See also* ER-062. It was Amazzia's practice to always select the third, "counterfeit product" option when reporting unauthorized resellers like Thimes. ER-198.

Amazon's form also allowed complainants to enter additional information to elaborate on the specific basis for the complaint they were submitting. ER-063, ER-117, ER-257. To complete the submission, the form required the complainant to click a box accepting a pre-filled attestation:

> I have a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner, and that the user of such content(s) is contrary to law.

> I declare, under penalty of perjury, that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above.

ER-064. During 2018 (i.e., the same year Amazzia submitted 73 counterfeiting

12

allegations regarding Thimes on behalf of TP-Link), it was Amazzia's typical practice to also include commentary in Amazon's form stating that "[c]ounterfeit products are being sold on the following listings," "[p]lease… remove these sellers currently listing counterfeit product," and "[t]he indicated sellers are not selling the authentic products as shown in the ASIN(s)[4] referenced."  ER-198 & ER-206.

On January 19, 2018, Amazon notified Thimes by e-mail that TP-Link had filed a complaint that Thimes was selling counterfeit TP-Link AC5400 routers.  ER-134.  Amazon notified Thimes of another complaint on January 21, 2018.  *Id.*  In response, Thimes reviewed its records to determine if it had sold that product directly to TP-Link.  *Id.*  Those records showed that a TP-Link employee had purchased two such units, but that TP-Link had submitted its first two counterfeiting complaints against Thimes before receiving, let alone inspecting, the routers it ordered from Thimes.  ER-134-35.  Thimes contacted TP-Link twice to advise that it was not selling any counterfeit products, but TP-Link ignored both of Thimes's attempts at outreach.  ER-052-53.

As Amazzia contemporaneously noted, Thimes proved to be a "really sticky seller" as Amazon would suspend Thimes's listings following the receipt of Amazzia's complaints, but would reinstate them later.  ER-208.  *See also* ER-010.

---

[4] ASIN = Amazon Standard Identification Number.  ER-197.

TP-Link repeatedly inquired about Thimes's status on Amazon, and Amazzia would report that they were "working diligently to have them removed as soon as possible." ER-212-13. Amazzia resorted to reporting Thimes "daily in [an] effort to have them removed sooner [rather] than later." ER-218. TP-Link was particularly concerned about Thimes because "our promotion plan are all postponed or cancelled because of the price" that Thimes was selling brand new TP-Link AC5400 routers on Amazon. *Id.* After Amazon reinstated Thimes yet again in June 2018, TP-Link requested Amazzia to resume its reporting campaign against Thimes, which Amazzia agreed to do "daily until they're removed." ER-222-23.

Amazon permanently expelled Thimes from its platform on August 27, 2018. ER-060. As of that date, Thimes still had around $500,000 in inventory left and was generating approximately $100,000 in net monthly profits. ER-135.

### C. The First Appeal.

On May 29, 2019, Thimes filed this lawsuit in the Southern District of New York. ER-262 (Dkt. 1). On December 6, 2019, venue was transferred to the Central District of California. ER-268 (Dkt. 50). Thimes filed its Second Amended Complaint on January 13, 2020. ER-270 (Dkt. 78).

TP-Link and Amazzia jointly moved to dismiss and/or strike the Second Amended Complaint on February 6, 2020. ER-271 (Dkt. 86). On June 8, 2020, the District Court granted TP-Link and Amazzia's motion to strike Thimes's state law

claims pursuant to California's anti-SLAPP statute. ER-273 (Dkt. 103). Thimes eventually filed a Fourth Amended Complaint, which the District Court dismissed. ER-276 (Dkt. 141). The case was dismissed with prejudice on March 22, 2021. *Id.* (Dkt. 145).

Thimes filed a notice of appeal on April 20, 2021. ER-277 (Dkt. 146). This Court heard oral argument for Thimes's previous appeal on April 7, 2022. ER-041. On April 15, 2022, this Court reversed the District Court's order striking Thimes's state law claims and held that TP-Link's complaints to Amazon about Thimes were not shielded by California's litigation privilege. ER-042-43. This Court otherwise affirmed the District Court's other orders that Thimes appealed. *Id.* It issued its mandate on May 9, 2022. ER-278 (Dkt. 158).

### D. The District Court Grants TP-Link's Motion for Summary Judgment Following Remand.

Following remand, Thimes filed its operative pleading—the Amended Fifth Amended Complaint—on May 27, 2022. ER-046. Thimes alleged its revived claims for intentional interference with contract, intentional interference with prospective business relationships, and trade libel. ER-055-56. TP-Link filed its answer and also brought a counterclaim for violation of the Lanham Act. ER-234.

On September 9, 2022, TP-Link moved for summary judgment. ER-283 (Dkt. 217). The District Court granted that motion on November 3, 2022. ER-008. It began by analyzing Thimes's trade libel claim and held that "[a] statement that is

15

expressly qualified as being a 'good faith belief' that another is committing intellectual property infringement generally is not a statement of fact." ER-013. The District Court found that "TP-Link's complaints were not merely that Thimes was selling 'counterfeit' goods (as Thimes's suggests), but rather that the goods Thimes was selling infringed TP-Link's trademark rights." *Id.* Accordingly, the District Court determined that Amazon "would have understood TP-Link's complaints that Thimes's products were 'counterfeit' as alleging a form of intellectual property infringement." *Id.* The District Court then stated its belief that "[g]iven the context that Amazon's web form, which does not allow a complainant to modify the language used to describe a report of possible wrongdoing, and which includes a qualifier that complaints are made pursuant to the complainant's good faith belief, TP-Link's complaints constitute opinions" and are thus unactionable. *Id.*

Rather than examine cases specifically concerning counterfeiting, the District Court reviewed this Court's precedent on "trademark infringement claims" brought against "gray market" resellers like Thimes and found the question of whether Thimes's resold products were materially different from what was sold by TP-Link (and thus infringing upon a TP-Link trademark) to be a legal one. ER-014. As such, the District Court held that TP-Link's "infringement complaint" could not have been proven false as a matter of fact. *Id.*

Next, the District Court granted summary judgment against Thimes's trade libel claims on the additional basis that Thimes could not satisfy the element of special damages. *Id.* Relying on precedent holding that proving special damages requires Thimes to "identify the particular purchasers who have refrained from dealing with [it] and specify the transactions of which [it] claims to have been deprived[,]" the District Court held that "Thimes's theory of damage reflects [only] a general decline in business[.]" ER-015-16. As to Thimes's identification of thousands of repeat customers who were prevented from making further purchases from Thimes on Amazon, the District Court concluded—without providing any reasoning—that "such evidence amounts only to a 'general decline in… business.'" ER-017.

Finally, the District Court noted that, under California law, both of Thimes's tortious interference claims require proof of an independently wrongful act. *Id.* The District Court held that, because TP-Link's counterfeiting allegations were nonactionable opinions, Thimes's contentions that TP-Link's conduct constituted libel *per se* and fraud under California law were not viable. *Id.* As for Thimes's remaining contentions that the counterfeiting allegations constituted unfair conduct under the UCL, and also were perjury and thus unlawful conduct under that statute, the District Court held that "the UCL applies only to commercial speech." ER-018. The District Court then held that TP-Link's complaints were not commercial speech

17

because they were submitted to a single non-purchaser (Amazon), were not promotional but rather allegations of legal wrongdoing, did not concern TP-Link's operations, products, or services except in the broadest sense, did not propose that TP-Link conduct business with anyone, and did not seek to promote sales of TP-Link products. *Id.* With the UCL also an unviable theory of independently wrongful conduct, the District Court thus granted summary judgment against both tortious interference claims. ER-018-19.

On November 22, 2022, the District Court dismissed Thimes's claims with prejudice and entered final judgment. ER-006. Thimes filed a notice of appeal on December 13, 2022. ER-260. On December 14, 2022, Thimes and TP-Link stipulated to dismiss TP-Link's counterclaim with prejudice. ER-288 (Dkt. 262).

## SUMMARY OF ARGUMENT

The District Court committed three distinct errors in granting TP-Link's motion for summary judgment. *First*, it dismissed Thimes's tortious interference claims for lack of an independently wrongful act. *Second*, it dismissed Thimes's trade libel claim by determining that TP-Link's complaints to Amazon—asserting that "[Thimes's] product is counterfeit (the product or packaging has an unlawful reproduction of a registered trademark)"—to be unactionable opinion statements. *Third*, it dismissed Thimes's trade libel claim for the additional reason that Thimes had no evidence of special damages.

18

On the first issue, the District Court held that TP-Link's false counterfeiting allegations would not constitute a violation of the UCL and therefore could not serve as a predicate for the independent wrongfulness element of Thimes's tortious interference claims. The District Court's only stated reasons for this conclusion was that the UCL applied only to commercial speech and that it did not consider TP-Link's counterfeiting allegations to be commercial speech under California law. In *Xu*, however, the California Court of Appeal held that a defendant's defamatory statements regarding its competitor's goods or services is commercial speech—even if the defendant did not publish these statements to its competitor's customers—because the defendant made those statements to advance its commercial interests. *Xu*, 73 Cal. App. 5th at 815-16. *Xu* is directly applicable to TP-Link's conduct here and, accordingly, the District Court's ruling was reversible error. Furthermore, even without *Xu*, TP-Link's counterfeiting allegations would constitute commercial speech under California's traditional test for such speech: evaluating the speaker, the intended audience, and the content of the message.

On the second issue, the District Court wrongly concluded that TP-Link's false counterfeiting allegations were "unactionable opinion statements" by holding that "[a] statement that is expressly qualified as being a 'good faith belief' that another is committing intellectual property infringement generally is not a statement of fact." ER-013. This pronouncement is contrary to precedent. It has been long

established that even ostensible opinions are actionable if they "imply an assertion of objective fact" that lead to a defamatory conclusion. *Milkovich*, 497 U.S. at 18-19. TP-Link's (forced) qualification that it had a "good faith belief" in its allegations therefore does not immunize those allegations from liability.

Moreover, the District Court improperly applied the totality of circumstances test in finding that TP-Link's counterfeiting allegations did not communicate or imply a provably false statement of fact. The District Court's conclusions from applying that test were based on findings that are contradicted by the record—that "Amazon's web form … does not allow a complainant to modify the language used." The undisputed evidence shows that Amazon's web form allows a complainant to elaborate on its accusations, and that TP-Link took advantage of that opportunity to levy additional, specific charges of counterfeiting and product inauthenticity against Thimes.

Additionally, the content and context of TP-Link's counterfeiting allegations made it clear that TP-Link was communicating specific factual assertions to Amazon—that Thimes was contemporaneously engaging in the criminal conduct of selling counterfeit products. The natural and probable effect these allegations would have upon the reader would be for the reader to take them seriously and act upon them—i.e., for Amazon to remove Thimes and/or its product listings from its

marketplace because Amazon would necessarily assume that TP-Link had factual support for its accusations.

Moreover, TP-Link's counterfeiting allegations can be proven false as a matter of fact. Counterfeiting has a specific meaning under the law, in layman's terms, on Amazon's online form, and also in Amazon's Anti-Counterfeiting Policy. All of these sources define a "counterfeit" product as one that is fake or inauthentic, and Thimes could demonstrate to a jury that it did not sell fake or inauthentic products. Without explanation, however, the District Court re-characterized TP-Link's counterfeiting complaints as an accusation "that another is committing intellectual property infringement[.]" ER-013. Having avoided an analysis of the actual words used by TP-Link, the District Court concluded that a statement that Thimes was committing intellectual property infringement was an opinion that could not be proven true or false. That is itself a debatable proposition, but in any event, the inquiry should have been whether TP-Link's allegation that Thimes was selling "counterfeit" TP-Link products—that featured an unlawful reproduction of a registered trademark—could have been proven true or false. As Thimes can prove these statements to be objectively false, those statements were not opinions.

Regarding the third issue, the District Court held that Thimes could not satisfy the special damages element because "[i]t has produced no evidence of any particular transaction with any particular customer that Thimes would have

completed but for the customer's reliance on TP-Link's allegedly false complaints." ER-017 (emphasis added). No published authority mandates that a trade libel claim rises or falls on whether the plaintiff's end customer relied upon the defamatory statement. Rather, the authorities consistently hold that the defamatory statement induced "others" not to deal with the plaintiff, which caused damage to the plaintiff. The "other" here was Amazon—it relied on TP-Link's false counterfeiting allegations to prevent Thimes from selling to its customers. Furthermore, Thimes identified over 4,000 repeat customers by name that it lost future sales to as a result of being expelled due to TP-Link's counterfeiting allegations. Such evidence was more than sufficient to create a triable issue of fact as to whether Thimes could have proven to a jury whether it had suffered special damages due to TP-Link's trade libel.

## STANDARD OF REVIEW

This Court "review[s] de novo the district court's grant of summary judgment." *Oswalt v. Resolute Indus., Inc.*, 642 F.3d 856, 859 (9th Cir. 2011). It must "determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 832 (9th Cir. 2002).

"[T]he plaintiff, to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

This Court reviews de novo a district court's determination of whether an allegedly defamatory statement implies an assertion of objective fact. *Steam Press Holdings, Inc. v. Hawaii Teamsters, Allied Workers Union, Loc. 996*, 302 F.3d 998, 1005 (9th Cir. 2002).

This Court likewise reviews the District Court's determination of state law de novo. *Kaiser v. Cascade Capital, LLC*, 989 F.3d 1127, 1132 (9th Cir. 2021). When interpreting state law, this Court is "bound to follow the decisions of the state's highest court, and when the state supreme court has not spoken on an issue, [the Court] must determine what result the court would reach based on state appellate court opinions." *Diaz v. Kubler Corp.*, 785 F.3d 1326, 1329 (9th Cir. 2015).

This Court reviews the District Court's findings of fact for clear error. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991). A finding of fact is clearly erroneous if it is "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from facts in the record." *Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*, 621 F.3d 981, 986 (9th Cir. 2010).

## ARGUMENT

## I.   THE DISTRICT COURT ERRED IN DISMISSING THIMES'S TORTIOUS INTERFERENCE CLAIMS.

To support its tortious interference claims, Thimes contended that TP-Link's false counterfeiting allegations were independently wrongful acts because they constituted libel *per se* and fraud, and also violated both the unfair and unlawful prongs of the UCL.  There can be no dispute that either a viable libel *per se* or fraud theory satisfies the independent wrongfulness requirement as a matter of law.  *See Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1142 (2020) ("An act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard.") (cleaned up).  The District Court's sole basis for disregarding the libel *per se* and fraud theories, however, was that the false counterfeiting allegations were nonactionable opinions.  ER-017.  For the reasons discussed in Section II.A of this brief, *infra*, TP-Link's counterfeiting allegations were not opinions.  Accordingly, the District Court's ruling with respect to the fraud and libel *per se* theories was in error and this Court should reverse.

There can also be no dispute that a UCL violation satisfies the independent wrongfulness requirement as a matter of law.  *See CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1110 (9th Cir. 2007) ("CRST validly alleged that Werner's acts violated the UCL, which the Court of Appeal considered

as a predicate for an independently wrongful act[.]").  The District Court correctly recognized that Thimes's theory was that TP-Link's false counterfeiting allegations violated the "unfair" prong of the UCL, and also constituted perjury that violated the "unlawful" prong of the UCL.  ER-018.  *See also Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214 (9th Cir. 2020) (violation of another federal or state law serves as predicate under UCL's "unlawful" prong) & *id.* at 1214-15 (violation of "unfair prong" includes a practice that is "'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers'") (citation omitted).  But the District Court went on to find that the UCL only applied to commercial speech and that TP-Link's false counterfeiting allegations to Amazon was not commercial speech under California law, thereby removing them from the purview of the UCL.  ER-018.  This ruling was also erroneous as described below.

### A.  TP-Link's Counterfeiting Complaints are Commercial Speech as a Matter of Law.

The California Court of Appeal recently examined the reach of the "commercial speech" exemption of the anti-SLAPP law.  *Xu*, 73 Cal. App. 5th at 812.  In *Xu*, the CEO of an insurance agency (Sky Vision) filed a defamation action against a rival for making disparaging remarks about Sky Vision to Sky Vision's insurance agents and a Sky Vision client.  *Id.* at 807-08.  In reversing the order granting the rival's anti-SLAPP motion to strike, the Court of Appeal found the rival's statements fell within the commercial speech exemption and held that "[t]he

purpose of this [commercial speech] exemption is straightforward: A defendant who makes statements about a business competitor's goods or services to advance the defendant's business cannot use the anti-SLAPP statute against causes of action arising from those statements." *See id.* at 813. *See also Zest Anchors, LLC v. Geryon Ventures, LLC*, No. 22-CV-230 TWR (NLS), 2023 WL 2903668, at \*9 (S.D. Cal. Apr. 10, 2023) (quoting *Xu*); *Heitkoetter v. Domm*, No. 22-CV-368-AWI-BAM, 2022 WL 16748731, at \*4 (E.D. Cal. Nov. 7, 2022) (same). The Court of Appeal considered the rival's argument that its speech was intended to recruit Sky Vision's agents, and not to promote or sell its own insurance products, but held that it was nonetheless commercial speech because it was ultimately intended to "increase sales of [the rival's] services and products." *Xu*, 73 Cal. App. 5th at 815-16.

Given that the California Supreme Court has noted that "'all of the speech exempted from the anti-SLAPP statute is commercial speech[,]'" *see FilmOn.Com*, 7 Cal. 5th at 147, the holding of *Xu* mandates reversal of the District Court's grant of summary judgment as to the intentional interference claims.

It is also worth noting that *Xu* directly negates the District Court's various conclusions as to why TP-Link's complaints did not constitute commercial speech. The District Court appeared to find that speech is commercial only if the speaker proposed doing business with the addressee or sought to promote a sale of its own product. ER-018. *Xu* shows that this view was too limited, and, in any event, TP-

26

Link's e-mails with Amazzia reflect that TP-Link accused Thimes of counterfeiting to enable TP-Link to sell its wireless router products at its desired price—i.e., TP-Link's communications were intended to promote its own sales.[5]  ER-218.  The District Court also seemed to hold that TP-Link's complaints were not commercial speech because it involved "allegations of legal wrongdoing[.]"  ER-018.  But speech having a secondary purpose does not take away its commercial nature and transform it into some other category.  *See JAMS, Inc. v. Superior Ct.*, 1 Cal. App. 5th 984, 998 (2016) ("Therefore, the statements or conduct from which Kinsella's causes of action arise is more 'commercial speech' than anything else.  Whether or not the statements may be used for other purposes does not change the analysis.").

### B.  The Evidence Establishes that TP-Link's Counterfeiting Complaints were Commercial in Nature.

Even without *Xu*, TP-Link's false counterfeiting complaints to Amazon constitute commercial speech under a traditional analysis.  In determining whether speech is commercial, California courts consider "'the speaker, the intended audience, and the content of the message.'"  *Serova v. Sony Music Ent.*, 13 Cal. 5th 859, 873-74 (2022).  Here, TP-Link and Amazon have a commercial relationship—the reason the two entities interact is because TP-Link sells its products on Amazon.

---

[5] Moreover, the District Court's conclusion that the counterfeiting allegations "do not concern TP-Link's… products… (except in the broadest sense)" is also erroneous (and puzzling).  ER-018.  The complaints literally accuse Thimes of selling fake versions of TP-Link's products.

And the content of TP-Link's counterfeiting allegations were commercial in nature: TP-Link retained Amazzia for the sole purpose of monitoring TP-Link's products on Amazon and "report[ing] unauthorized sellers to Amazon until Amazon removed their TP-Link product offers from the listings." ER-197-98. TP-Link retained Amazzia for "brand protection" service to eliminate the competitive threat from Thimes's lower prices so TP-Link could carry out its own "promotion plan." ER-218. The record thus establishes the commercial nature of TP-Link and Amazon's relationship. Notably, neither the District Court nor TP-Link identified any evidence suggesting that TP-Link had sincere concerns concerning product authenticity.

## II.  THE DISTRICT COURT ERRED BY FINDING THAT TP-LINK'S FALSE COUNTERFEITING COMPLAINTS WERE UNACTIONABLE STATEMENTS OF OPINION.

In granting summary judgment, the District Court found TP-Link's false counterfeiting complaints to be unactionable opinions because "[a] statement that is expressly qualified as being a 'good faith belief' that another is committing intellectual property infringement generally is not a statement of fact." ER-013. The pronouncement is contrary to precedent.

### A.  Statements of Opinion Do Not Enjoy Unfettered Constitutional Protection.

Trade libel is "the publication of matter disparaging the quality of another's property, which the publisher should recognize is likely to cause pecuniary loss to the owner." *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1010 (2001).

28

It encompasses "all false statements concerning the quality of services or product of a business which are intended to cause that business financial harm and in fact do so." *Id.* A statement must be false to constitute trade libel. *Id.* Because opinions cannot be false, opinions will not support a trade libel cause of action. *Id.*

"Statements of opinion, however, do not enjoy blanket protection." *Dickinson v. Cosby*, 37 Cal. App. 5th 1138, 1163 (2019). The Supreme Court has recognized that "expressions of 'opinion' may often imply an assertion of objective fact." *Milkovich*, 497 U.S. at 18. It further elaborated:

> If a speaker says, "In my opinion John Jones is a liar," he implies a knowledge of facts which lead to the conclusion that Jones told an untruth. Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications; and the statement, "In my opinion Jones is a liar," can cause as much damage to reputation as the statement, "Jones is a liar."

*Id.* at 18-19. California courts have likewise "reject[ed] the notion that merely couching an assertion of a defamatory fact in cautionary language such as 'apparently' or 'some sources say' or even putting it in the form of a question, necessarily defuses the impression that the speaker is communicating an actual fact." *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 704 (2007). And in particular, this Court has held that "[s]tatements that 'could reasonably be understood as imputing specific criminal or other wrongful acts' are not entitled to

constitutional protection merely because they are phrased in the form of an opinion." *Standing Comm. on Discipline of U.S. Dist. Court for Cent. Dist. of California v. Yagman*, 55 F.3d 1430, 1440 (9th Cir. 1995) (citation omitted).

Because statements of opinion are not *per se* immune from trade libel liability, let alone statements of opinion that impute the specific federal crime of counterfeiting, it is therefore not dispositive whether TP-Link "expressly qualified" the 73 false counterfeiting allegations that it submitted to Amazon "as being [its] 'good faith belief[.]'" The question "is not whether a statement 'might be labeled opinion,' but rather whether a reasonable factfinder could conclude that the statement 'impl[ies] an assertion of objective fact.'" *Unelko Corp.*, 912 F.2d at 1053. "If a statement of opinion implies knowledge of facts which may lead to a defamatory conclusion, the implied facts must themselves be true [to avoid defamation liability]." *Rodriguez*, 314 F.3d at 986 (quoting *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359 (1999). Indeed, even TP-Link conceded during the summary judgment hearing that simply qualifying a statement with "I believe" would not immunize the speaker from a defamation claim. ER-026.

## B. The Totality of Circumstances Demonstrates that TP-Link's Counterfeiting Allegations Imply a Factual Assertion.

To determine whether a statement communicates or implies a provably false statement of fact, this Court applies a three-factor "totality of circumstances" test: "(1) whether the general tenor of the entire work negates the impression that the

defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is susceptible of being proved true or false." *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1157 (9th Cir. 2021) (citation omitted). This analysis "examine[s] the work as a whole, the specific context in which the statements were made, and the statements themselves to determine whether a reasonable factfinder could conclude that the statements imply a false assertion of objective fact." *Partington*, 56 F.3d at 1153. California courts use their own materially indistinguishable totality of circumstances test. *See Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 385 (2004). Applying the totality of circumstances test here establishes that the District Court erred in finding TP-Link's counterfeiting allegations to be mere opinions.

1.  The context and tenor of TP-Link's counterfeiting complaints give the impression that it was asserting provably false facts.

Without acknowledging that statements nominally appearing to be opinions could be actionable if they implied an assertion of objective fact, the District Court set forth its conclusions after purportedly applying the totality of circumstances test. Regarding the first factor, it appears that the District Court determined that "TP-Link's complaints contain unactionable opinion statements" because they "were made in the general context of an Amazon-hosted online form" that "limits a complainant's allegations to generic statements" and "does not allow a complainant

to modify the language used to describe a report of possible wrongdoing," and "the descriptions are legal in nature and must be supported by a good-faith belief." ER-013-14. The District Court's conclusion is contrary to the evidence and legally erroneous.

        **a)**        **TP-Link modified the Amazon form to make specific allegations of counterfeiting.**

The District Court's determination that Amazon's online form "limits a complainant's allegations to generic statements"; "does not allow a complainant to modify the language used to describe a report of possible wrongdoing"; or that "the descriptions are legal in nature" are all contradicted by the record. ER-013-14. Contrary to the District Court's findings, the evidence shows that Amazon's online form invites the complainant to elaborate on its allegations by providing a section entitled "Additional Information":



ER-062-63. Mikhail Fikhman, the co-founder and Chief Executive Officer of Amazzia, attested that Amazzia's typical practice was to include additional, specific charges about the ASINs it was reporting as a "counterfeit product" and that "[t]he indicated sellers are not selling the authentic products as shown in the ASIN(s)

referenced." ER-198 & ER-206. William Fikhman—another Amazzia co-owner—testified at a deposition in another lawsuit that Amazzia would insert such language "into the box" in Amazon's complaint form. ER-114 & ER-117.

There is no evidence disputing the Fikhmans' attestations. Moreover, precedent required the District Court to "draw all justifiable inferences in favor of [Thimes], 'including questions of credibility and of the weight to be accorded particular evidence." *Kaelin v. Globe Commc'ns Corp.*, 162 F.3d 1036, 1039 (9th Cir. 1998).

> **b)** **The medium through which TP-Link made its counterfeiting allegations means the reader would view the statements as factual.**

This Court requires "examin[ing] the work as a whole" and "the specific context in which the statements were made." *Partington*, 56 F.3d at 1153. "The context in which the statement appears is paramount in our analysis, and in some cases it can be dispositive." *Knievel*, 393 F.3d at 1075. *See also Campanelli v. Regents of the Univ. of Cal.*, 44 Cal. App. 4th 572, 579 (1996) ("Context can also be a major determinant of whether an alleged defamatory statement constitutes fact or opinion."). Context includes "the general tenor of the entire work, the subject of the statements, the setting, and the format of the work." *Herring Networks*, 8 F.4th at 1157. This contextual analysis requires courts to "place itself in the position of the ... reader, and determine the sense of meaning of the statement according to its

33

natural and popular construction" and the "natural and probable effect [it would have] upon the mind of the average reader." *Rodriguez*, 314 F.3d at 986.

Thimes is not aware of a single instance where this Court applied this contextual analysis to determine that accusations of criminal conduct, made by a business's competitor to its contractual counterparty, were mere opinions. Rather, the case law suggests that this contextual analysis is typically used to establish that political speech or satire are opinions given their tenor and the overall setting, even when the words used literally consist of statements of fact. *See*, *e.g.*, *Herring Networks*, 8 F.4th at 1158 (holding that Rachel Maddow's statement that rival network was "paid Russian propaganda" was just colorful commentary); *Knievel v. ESPN*, 393 F.3d 1068, 1078 (9th Cir. 2005) (finding statement that Evel Knievel was a "pimp" was merely an attempt at sophomoric humor given its overall context). There is nothing humorous about TP-Link's counterfeiting allegations, nor is there any suggestion that TP-Link's accusations are not meant to be taken seriously. Rather, as the undisputed evidence established, TP-Link expressly intended to have Amazon act upon these allegations to remove Thimes, or at least its TP-Link product offerings, from Amazon. ER-218.

In particular, the District Court was required to "determine the sense of meaning of the statement according to its natural and popular construction" and the "natural and probable effect [it would have] upon the mind of the average reader."

34

*Rodriguez*, 314 F.3d at 986. Here, unlike forums or blogs that invite commentary and discourse, the tone and content of Amazon's reporting form is serious. The "natural and probable effect" it would have upon an average reader is to take the accusations seriously. Indeed, to serve the purpose of the complaint form, Amazon would expect the complainant to have some factual basis for its accusations. Otherwise, the complaint form would serve no purpose. The District Court concluded that TP-Link's complaints were "legal in nature" and "the foreseeable complainants … business people rather than lawyers[,]" *see* ER-014, but that cuts in favor of the overall context of these counterfeiting allegations as implying assertions of fact, as businesspeople would not treat those allegations as a joke or as overheated commentary.

Moreover, this Court's recent decision in *Enigma Software* further demonstrates that the District Court should not have found TP-Link's counterfeiting complaints to be mere opinions under a proper contextual analysis. *Enigma Software*, 2023 WL 3769331, at **4-5. In that case, the district court found defendant Malwarebytes's labeling its competitor Enigma's software as "malicious" and a "threat" to be "non-actionable statements of opinion" and dismissed Enigma's

Lanham Act claim. *Id.*[6] In reversing that order, this Court held that Malwarebytes's statements "'make[] a claim as to the specific or absolute characteristics of a product' and are accordingly actionable statements of fact under the Lanham Act." *Id.* at *5 (citation omitted). Of particular relevance here, this Court noted that Malwarebytes's statements "employ terminology that is substantively meaningful and verifiable," and that "[Enigma's] products either contain malicious files and threaten the security of users' computers, or they do not. These statements are not the type of general, subjective claims typically deemed non-actionable opinions." *Id.*

Here, like Malwarebytes in *Engima Software*, TP-Link's complaints "employ terminology that is substantively meaningful and verifiable," *see id.* at *5: Thimes either sold counterfeit TP-Link products on Amazon, or it did not. TP-Link's counterfeiting complaints are not the type of general, subjective claims typically deemed non-actionable opinions. And the District Court failed to articulate any rational basis why, under the circumstances in which Amazon received those complaints, the only permissible conclusion was that Amazon would have treated the complaints as merely expressing unverifiable opinions.

---

[6] A false advertising claim under the Lanham Act requires, among other things, "a false statement of fact in a commercial advertisement." *Enigma Software*, 2023 WL 3769331, at *4.

36

2. <u>TP-Link did not use figurative or hyperbolic language that would negate the impression it was asserting an objective fact</u>.

The District Court did not appear to address the second factor of the totality of circumstances test and, in any event, there is no language that one could deem to be figurative or hyperbolic. TP-Link's counterfeiting allegations did not provide "imaginative expression" or "colorfully expressed commentary," nor were they "humorous or satirical" or "rhetorical hyperbole." *Unelko Corp.*, 912 F.2d at 1054; *Herring Networks, Inc.*, 8 F.4th at 1159; *Partington*, 56 F.3d at 1157. Instead, TP-Link "asserted the precise factual nature of [its] accusation, and charged [Thimes] with the specific and objectively verifiable acts of [counterfeiting]." *Rodriguez*, 314 F.3d at 987.

3. <u>TP-Link's complaints are reasonably susceptible of being interpreted as implying a provably false assertion of fact</u>.

Regarding the third factor of the totality of circumstances test, the District Court held TP-Link's counterfeiting allegations could not be proven false as a matter of fact because the legality of "gray market" resellers like Thimes was complicated. ER-013-14. This holding was erroneous for three independent reasons.

a) **The District Court arrived at its erroneous conclusion by improperly recharacterizing the actual words TP-Link used.**

Without explaining why, the District Court did not analyze the actual words of the challenged statements (i.e., "product is counterfeit (the product or packaging has an unlawful reproduction of a registered trademark)"; "sellers are not selling the

authentic products as shown in the ASIN(s) referenced."). ER-062 & ER-206. Instead, the District Court ignored TP-Link's actual words and reduced them to an abstract level of generality—"a statement… that another is committing intellectual property infringement[.]" ER-013. That kind of recharacterization can potentially transform any statement of fact into something else—compare "Bob stole a car" versus "Bob broke the law."

Of course, precedent required the District Court to examine "the **specific** context and **content** of the statements." *Underwager*, 69 F.3d at 366 (emphasis added). Thimes is not aware of any authority permitting the District Court to substitute its own interpretation of the challenged statements—and not the actual statements themselves—when examining the totality of circumstances, and the District Court cited none. *See* ER-013-14. In fact, this Court in *Enigma Software* analyzed the exact words used by the defendant ("malicious" and "threat") instead of analyzing its own interpretation of what those words could have meant. *Enigma Software*, 2023 WL at 3769331, at **4-5.

Moreover, the District Court's decision to recharacterize TP-Link as accusing Thimes of generic trademark infringement only highlights that TP-Link, in fact, **had declined the option of generically accusing** Thimes of "unlawfully using my trademark" or having "a product or its packaging [that] has my trademark on it[.]" ER-062. Instead, TP-Link chose to allege that "a product is counterfeit (the product

38

or packaging has an unlawful reproduction of a registered trademark)[.]" *Id.* And it further elected to accuse Thimes of selling "counterfeit" or "[not] authentic" products. ER-206. The words that TP-Link chose to use have specific meanings— per this Court in *Enigma Software*, "terminology that is substantively meaningful and verifiable," 2023 WL 3769331, at *5—all of which can be proven to be true or false as a matter of fact.

To illustrate, a "counterfeit" under the Lanham Act is "a spurious mark which is identical with or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. And this Court has defined "spurious" as "[w]hen a genuine trademark is affixed to a counterfeit product, it becomes a spurious mark. A 'spurious' mark is one that is false or inauthentic." *U.S. v. Petrosian*, 126 F.3d 1232, 1234 (9th Cir. 1997) (emphasis added). Thus, Thimes would have been selling "counterfeit" TP-Link products if Thimes had applied "TP-LINK®" onto another good. *See Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 945, 946 (9th Cir. 2011) (a counterfeit mark is "(1) a non-genuine mark identical to the registered, genuine mark of another, where (2) the genuine mark was registered for use on the same goods to which the infringer applied the mark."). Thimes only sold factory-sealed TP-Link products, and never applied TP-Link's mark to any of the products that it sold. Thus, Thimes could prove to a jury that TP-Link's allegations could be proven false as a matter of fact.

39

As another example, laypeople understand the word "counterfeit" to refer to a forgery, inauthentic, or fake product. The Merriam-Webster dictionary defines that term to mean "made in imitation of something with intent to deceive[.]" Dictionary.com states that "counterfeit" means "made in imitation so as to be passed off fraudulently or deceptively as genuine; not genuine; forged[.]" *See also Gen. Motors Corp. v. Keystone Auto. Indus., Inc.,* 453 F.3d 351, 355 (6th Cir. 2006) ("Similarly, customers knowing they are purchasing a ***knockoff*** designer purse or Rolex watch simply do not confuse the ***counterfeit*** with the original.") (emphasis added). Thimes did not sell any forged, inauthentic, fake, or knockoff versions of TP-Link wireless routers. Accordingly, it can objectively prove the falsity of TP-Link's allegations.

Even Amazon would have understood the word "counterfeit" to mean something other than what the District Court ascribed to it. Amazon's form itself defines "counterfeit" to mean an "unlawful reproduction of a registered trademark[.]" ER-062. Thimes can prove to a jury that it did not use any "reproduction" of TP-Link's trademark. Amazon's understanding can also be discerned by reviewing its Anti-Counterfeiting Policy, which repeatedly proscribes the sale of "inauthentic" products and gives examples of counterfeit products as "bootlegs, fakes, pirated copies" and "products that have been illegally replicated, reproduced or manufactured[.]" ER-103. Thimes can objectively prove that it did

not sell any "inauthentic," "bootleg," "fake," "pirated," "replicated," "reproduced," or "manufactured" products.

Moreover, in *Enigma Software*, this Court addressed whether the terms "malicious" and "threat" were insufficiently specific to imply an objective assertion of fact. *Enigma Software*, 2023 WL 3769331, at **4-5. In reaching this conclusion, this Court referred to the specific context that those terms were being used in software designed to address malware, and that those terms were capable of having a specific meaning that would be understood to users within that specific context. *Id.* Here too, in light of the definitions (lay and legal) and Amazon's own policy, it was clear to Amazon that an accusation of "counterfeiting" is, at its core, an allegation that one is presenting something that is inauthentic, not genuine, or fake. That is a statement that can be proven false as a matter of fact.

### b) Whether Thimes committed generic trademark infringement can be proven false as a matter of fact.

Even assuming that it was proper for the District Court to recharacterize TP-Link's counterfeiting allegations as a generic accusation of trademark infringement, Thimes could nonetheless prove as a matter of law that such a claim was false as a matter of fact.

This Court has long held that an unauthorized reseller of genuine goods is not infringing on a manufacturer's trademark. In *NEC Electronics v. CAL Circuit Abco*, 810 F.2d 1506 (9th Cir. 1987), this Court held that a "grey market" reseller—i.e., a

41

business that buys a manufacturer's products overseas (usually at a substantially lower cost) for re-sale in the United States in competition with the manufacturer— is not committing trademark infringement. *Id.* at 1507-08, 1510. As the Court noted: "Trademark law generally does not reach the sale of genuine goods bearing a true mark even though such sale is without the mark owner's consent." *Id.* at 1509. Since the goods were genuine, this Court determined there was no trademark violation even though the reseller was not an authorized distributor. *Id.* at 1510 ("Abco may be liable in contract or tort, ***but not in trademark***[.]") (emphasis added).

This Court then expanded *NEC* in *Sebastian International, Inc. v. Longs Drug Stores Corporation*, 53 F.3d 1073 (9th Cir. 1995). In that case, this Court held that under the "first sale" doctrine, a retailer that merely stocked and resold genuine trademarked goods that it lawfully acquired on the open market does not violate the Lanham Act. *Id.* at 1076. That the retailer was not an authorized reseller of the manufacturer was irrelevant. *Id.* at 1075-77. This Court accordingly reversed the entry of a preliminary injunction preventing the defendant retailer from reselling the plaintiff's products. *Id. See also Am. Circuit Breaker Corp. v. Oregon Breakers Inc.*, 406 F.3d 577, 585-586 (9th Cir. 2005) (holding that district court properly dismissed Lanham Act claims brought by manufacturer against gray market importer because the imported goods were genuine).

Thimes only re-sold genuine, factory-sealed TP-Link products that it lawfully acquired on the open market. ER-130 ("At all times, Thimes has only sold genuine products on the Amazon Marketplace, including TP-Link products."). Thus, it could prove the falsity of even a generic allegation that it engaged in trademark infringement.

### c) The District Court's interpretation of TP-Link's statements is not the only reasonable interpretation as a matter of law.

The District Court likewise erred by concluding as a matter of law that its assessment of TP-Link's complaints—as not "sufficiently factual to be susceptible of being proved true or false," ER-014—is the only reasonable interpretation of the statements at issue.

This Court holds that "[e]ven assuming that [the district court's] reading is reasonably possible, it is not the only reading that is reasonably possible as a matter of law. So long as the publication is reasonably susceptible of a defamatory meaning, a factual question for the jury exists." *Kaelin*, 162 F.3d at 1040 (citing *Kahn v. Bower*, 232 Cal. App. 3d 1599, 1608 (1991) (holding where statement can be interpreted as conveying defamatory meaning, "it is for the jury to determine whether a defamatory meaning was in fact conveyed")).

*Manufactured Home Communities, Inc., Inc. v. County of San Diego*, 544 F.3d 959 (9th Cir. 2008), is instructive. There, the district court granted summary

43

judgment to the defendant after interpreting her public statements as an assertion of opinion rather than fact. *Id.* at 962-63. This Court reversed, holding that while the district court may have been correct in its assessment, it was error for it to conclude that it was "the *only* reasonable interpretation of the statements at issue" because "[a court] cannot declare as a matter of law that no reasonable person could construe them as provably false." *Id.* at 964 n.3 (emphasis in original). Citing *Kahn*, 232 Cal. App. 3d at 1609, this Court held that, under California law, if the challenged statements are "'reasonably susceptible of an interpretation which implies a provably false assertion of fact,' then they may be considered by the jury 'to determine whether such an interpretation was in fact conveyed.'" *Id.* at 963.

## III. THE DISTRICT COURT ERRED BY HOLDING THAT THIMES HAD NOT PRODUCED ANY EVIDENCE OF SPECIAL DAMAGES.

The District Court also granted summary judgment against Thimes's trade libel claim for its purported inability to satisfy the element of special damages. ER-014. This ruling was also erroneous.

### A. There is No Authority Expressly Requiring the Defendant to Make the Libelous Statement Directly to the End Customer.

The District Court held that Thimes could not satisfy the special damages element because "[i]t has produced no evidence of any particular transaction with any particular customer that Thimes would have completed but for the customer's reliance on TP-Link's allegedly false complaints." ER-017. This holding, however,

44

appears to conflate the requirements for causation and special damages, as they are distinct concepts. *See Aetna Cas. and Sur. Co. v. Centennial Ins. Co.*, 838 F.2d 346, 351 (9th Cir. 1988) ("The case of action for trade libel thus requires: (1) a publication, (2) which induces others not to deal with plaintiff, and (3) special damages.").

Regardless, while courts have required a trade libel plaintiff to show that publication of the defamatory statement "induces others not to deal with plaintiff[,]" there does not appear to be any authority requiring the defamatory statement to have been made to the end customer. Confusingly, the District Court does not cite any authority for its holding that the end customer needs to rely on TP-Link's counterfeiting allegations. ER-014-15. And in response to Thimes's point that no authority requires reliance by such customers, the District Court stated in a footnote that it "does not decide this issue because other flaws defeat the trade libel claim here." *Id.* (Of course, the District Court went on to decide that very issue by calling it "special damages" instead of causation.)

The two leading California court opinions on special damages for trade libel claims are *Muddy Waters* and *Erlich v. Etner*, 224 Cal. App. 2d 69 (1964). In *Muddy Waters*, the Court of Appeal reaffirmed that a trade libel claim requires: "(1) a publication; (2) which induces others not to deal with plaintiff; and (3) special damages." 62 Cal. App. 5th at 925. In affirming the dismissal of a trade libel claim,

the Court of Appeal held: "the existence of a specific customer *or business entity* that refrained from dealing with plaintiff as a result of reliance on the Dupré Reports is an essential factual element of plaintiff's cause of action for trade libel[.]" *Id.* (emphasis added). *See also id.* at 926 ("the absence of any evidence to suggest that a specific customer *or business associate* refrained from doing business with plaintiff as a result of the publications is fatal to its trade libel claim.") (emphasis added). The Court of Appeal thus twice defined the reliance requirement in the disjunctive—either the customer *or* some other business entity received the defamatory statement and stopped doing business with the plaintiff as a result. This is logical, given that many businesses sell products or services through intermediaries and would accordingly lose sales when a defamatory statement causes those intermediaries to cut off transactions between those businesses and the ultimate customer. Here, Amazon—like all two-sided marketplaces—is the critical intermediary between the buyer and the seller. TP-Link's counterfeiting allegations caused Amazon to cease doing business with Thimes and Thimes to lose access to Amazon, which cut off its ability to sell to its former customers.

As for *Erlich*, it concerned a publication accusing the plaintiff—a large kosher chicken distributor—of selling non-kosher products. 224 Cal. App. 2d at 70. The Court of Appeal held that there was a complete failure of proof of both causation and damages. *Id.* at 75. Nowhere in the opinion does *Erlich* limit the issue of

46

reliance to the ultimate customer for the defamatory publication. Rather, the Court of Appeal quoted Dean Prosser for the proposition that the libelous statement must have "played a material and substantial part in inducing *others* not to deal with him," and that "as a result he has suffered special damages." *Id.* at 73 (emphasis added). Again, while the *typical* trade libel case involves defamatory statements made directly to ultimate customers, there is no reason (or requirement) to limit it *only* to such customers. The California Courts of Appeal could have used such limiting language if they wanted to, but they instead consistently chose to use more open-ended language.

Additionally, it bears noting that the Judicial Council of California jury instructions for trade libel similarly does not employ the limitation imposed by the District Court. Instead, the model instruction requires a trade libel plaintiff to establish "that *someone else* acted in reliance on the [defamatory] statement." *See* Judicial Council Of California Civil Jury Instruction (CACI) 1731 (emphasis added).

Finally, the District Court faulted Thimes for not identifying any authority where a trade libel plaintiff did not have to identify any lost customers or purchases. ER-015. But Thimes never so contended. Rather, as explained in its papers and during oral argument, ER-022-25, Thimes argued that there is no authority requiring a trade libel plaintiff to show that the disparaging statement induced the ultimate customer to stop doing business with that plaintiff. Thimes agrees that the special

47

damages element requires it to identify specific lost customers—which it did, as shown below.

**B.** **Thimes Established Proof of Special Damages By Identifying the Specific Customers That It Lost as a Result of TP-Link's False Counterfeiting Complaints.**

*Muddy Waters* held that to establish special damages, it "is not enough to show a general decline in plaintiff's business resulting from the falsehood, even where no other cause for it is apparent. It is only the loss of specific sales that can be recovered." 62 Cal. App. 5th at 925 (cleaned up). "This means, in the usual case, that the plaintiff must identify the particular purchasers who have refrained from dealing with him, and specify the transactions of which he claims to have been deprived." *Id.*

That is exactly what Thimes did. It identified 87 specific customers by name that had repeatedly purchased products from Thimes between 4 and 17 times. ER128-129. Thimes further identified by name an additional 4,092 repeat customers that had purchased products between two to three times from it. ER-030, ER-130. These are 4,179 repeat customers who no longer can buy from Thimes because Amazon had expelled it from its marketplace.

Moreover, Thimes submitted evidence explaining why it would have converted those repeat customers into additional sales via Amazon's "Buy Box" option: that Amazon's Buy Box option enables customers to add the product to the

shopping cart via the "Add to Cart" button, ER-126-128; that Thimes regularly qualified for the Buy Box option, ER-128; that around 75% of all sales on the Amazon Marketplace are made through the Buy Box, ER-130; and that Amazon itself acknowledges that Buy Box eligibility can lead to increased sales, ER-076.

Rather than "viewing the evidence in the light most favorable to [Thimes]" and drawing "all justifiable inferences" in its favor, as precedent requires, *Tolan*, 572 U.S. at 651, 657, the District Court found Thimes's identification of lost customers "insufficient, as such evidence amounts only to a 'general decline in … business.'" ER-017. But the District Court fails to cite any authority supporting its position, nor does it offer any rational basis why Thimes's identifying specific lost customers constitutes only a general decline in business. A general decline of business is pointing to a decline in overall sales post-publication of the defamatory statement, and inferring the decline was caused by the publication of that statement, without identifying a single customer that stopped transacting with the plaintiff. *Cf. Sunward Corp. v. Dun & Bradstreet, Inc.*, 811 F.2d 511, 539 (10th Cir. 1987) (explaining that presumed general damages may rely on a general decline in sales without naming specific lost customers, but special damages may not be proved by merely by a decline in sales). The record establishes that Thimes did not rely on such an inference, but instead provided evidence of 4,179 customers who no longer

can buy from Thimes because TP-Link's counterfeiting complaints caused Amazon to expel Thimes from its marketplace.

Furthermore, the District Court's reliance on *Muddy Waters*, *Erlich*, and other authorities only strengthens Thimes's position, as the plaintiff in each of those cases failed to provide any evidence of specific lost customers. In *Muddy Waters*, the court noted that "Plaintiff has not directed us to any evidence in the record identifying any such customer or other business entity, let alone any specific contract or sale that it claims was lost as a result of the [libelous statement]. Nor have we been able to independently locate any such evidence in the record." 62 Cal. App. 5th at 925-926.

As for *Erlich*, the Court of Appeal found that plaintiff made "no showing of damage, either in any specific sum or at all" whatsoever. 224 Cal. App. 2d at 74-75.

The other cited cases similarly do not establish that Thimes's evidence of special damages was insufficient as a matter of law. *See Mann v. Quality Old Time Serv., Inc.*, 120 Cal. App. 4th 90, 109 (2004) (plaintiff failed to show any proof of pecuniary loss); *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1155 (N.D. Cal. 2019) (noting "[plaintiff] has not identified any particular customers associated with these sales, nor explained whether these customers' decision to purchase Boost products in lieu of [plaintiff's] products was attributable to

Defendants' trade libel."); *Piping Rock Partners, Inc. v. David Lerner Associates, Inc.*, 946 F.Supp.2d 957, 981 (N.D. Cal. 2013) (noting that, "[a]t best, the counterclaim contains one vague assertion, 'Clients of DLA have redeemed their investments, and some of those clients have informed DLA that the reason they have redeemed their investments is based on negative information they had read on the Internet.'… this vague assertion is insufficient to show pecuniary loss."); *Heartland Payment Sys., Inc. v. Mercury Payment Sys., LLC*, No. 14-CV-0437 CW, 2016 WL 304764, at *11 (N.D. Cal. Jan. 26, 2016) (no identification of any customer "who refused to do business with it as a result of [the] allegedly libelous statements.").

## CONCLUSION

For the foregoing reasons, Thimes respectfully requests that this Court reverse the District Court's summary judgment order in full and remand for further proceedings with Thimes's trade libel and tortious interference claims reinstated.

Dated: June 23, 2023            Respectfully submitted,

s/Randolph Gaw
Randolph Gaw
GAW | POE LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Tel: (415) 766-7451
Attorneys for Plaintiff-Appellant
Thimes Solutions Inc.

## STATEMENT OF RELATED CASES

There are no related cases that are known to Plaintiff-Appellant.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Circuit Rule 28.1-1(b) because this brief contains 11,782 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word Times New Roman 14 point font.

/s/ Randolph Gaw
Randolph Gaw